WILLIAM P. GILBERT, *Appellee*, v. GEORGE GRUBEL, JR., *Appellant.*

No. 16,530.

SYLLABUS BY THE COURT.

1. CONTRACTS—*Accrual of Action for a Breach—Performance Prevented by Defendant.* A owned a business located in Kansas City, Kan. He wished to dispose of a one-half interest therein to some person who was familiar with it and capable of becoming manager thereof, and with whom he might subsequently form a partnership. B, who claimed to understand the business, proposed to purchase one-half thereof, and they entered into an agreement which was, in substance, as follows:

B was to manage the business and receive out of the profits thereof the sum of $15 per week for his services. When the profits amounted to the sum of $800 A was to have the whole amount thereof, which was to be in full satisfaction for the one-half interest sold to B.

The contract was carried out as contemplated until the profits amounted to $779.52, when A, without cause, forcibly ousted B and terminated the contract. *Held,* that a cause of action for damages accrued in favor of B immediately.

2. —— *Measure of Damages for a Breach—Evidence.* In an action by B founded upon the facts above described the measure of his damages would be such sum as would fairly compensate him for the loss sustained. In estimating this amount it would be proper to consider the value of the property to which he would have been entitled if the contract had been completed, and how much of the agreement was unfinished at the time he was ousted.

3. —— *Action for a Breach—Demurrer to Petition.* Where, in such an action by B, his petition alleges the execution of the contract, its performance in good faith by him until practically finished, and his wrongful exclusion from the opportunity to complete the contract and receive the benefit of the property thereunder as stipulated, a demurrer to such petition should be overruled.

Appeal from Wyandotte court of common pleas; HUGH J. SMITH, judge. Opinion filed May 7, 1910. Affirmed.

*J. E. McFadden,* and *O. Q. Claflin, jr.,* for the appellant.

*John T. Sims,* for the appellee.

The opinion of the court was delivered by

GRAVES, J.: This action was commenced for the purpose of recovering damages for a breach of contract. The facts are sufficiently stated in the petition, which reads:

"The plaintiff for his cause of action against the defendant says:

"(1)  That on the —— day of December, 1906, for a valuable consideration moving between them, the plaintiff and defendant duly executed the written contract, a copy of which is hereto attached, marked 'Exhibit A,' and made a part of this petition.

"(2)  That, at the time, the defendant was engaged in several kinds of business, one branch of which was being conducted in the name of the Kansas City, Kansas, Gravel Roofing Company, of which the defendant was the owner and sole proprietor; that the teams, wagons, tools, patterns and implements belonging to and used in said business were of the value of $800.

"(3)  That by the terms of said agreement the defendant employed the plaintiff to take charge of and manage said business, and agreed that he, the defendant, would take all the net profits of the business, and out of the same would pay the plaintiff the sum of $15 per week until such time as the profits should equal the sum of $800, and then he would, in addition to paying the aforesaid sum of $15 per week, give the plaintiff for his said services a half interest in said company, and thereafter the profits should be divided equally between them.

"(4)  That thereupon the plaintiff, at the request of the defendant, and pursuant to said contract, took charge of said gravel roofing business and the aforesaid property under therein, and managed the same successfully and profitably until on or about the first of July, 1907, when the defendant, in violation of said agreement, and without any cause for so doing, took the business and property used therein out of the possession and charge of the plaintiff, and refused to carry

out his said contract, against the will and without the consent of the plaintiff.

"(5)    That the said business was well established, in good territory, in Kansas City, Kan., and had a good line of patrons; that said company did a large amount of business at a fair profit, and had no losses at any time; that the defendant kept all accounts relating to the business; that he collected all bills for work, and out of the proceeds thereof furnished all material to be used in the prosecution of the work, and the plaintiff simply received his $15 per week from the defendant, but was not permitted to see and know the state of accounts except as he could keep them partially in memory.

"(6)    The plaintiff says that said company made net profits on its contracts, and that during the time it was operated as aforesaid the same amounted to $779.52, or within $20.48 of the full amount it was necessary to earn, net, to entitle the plaintiff to a half interest in said business and the property used therein, under the terms of said contract, when the defendant wrongfully and forcibly ousted the plaintiff and refused to permit him to complete his contract.

"(7)    The plaintiff says that said company was a going concern, and had a well-established, growing business; and a half interest therein would have been worth more than half the value of the property of the company, which had been increased by the addition of a horse and buggy, paid for out of the proceeds of the business at a cost of $166, making the value of the property $966, one-half of which the plaintiff has been deprived of, by the aforesaid wrongful conduct of the defendant; and the plaintiff has in like manner been deprived of his interest in the good will of said established business, which was worth $500.

"(8)    Plaintiff further says that he has at all times been ready, able and willing to perform said agreement in good faith on his part, and would have done so, if he had not been prevented by the defendant, as hereinbefore stated; that since he was ousted from said business he has lost the stipulated salary of $15 per week, to his further damage $150.

"Wherefore, by reason of the premises, the plaintiff demands judgment against the defendant for the sum of $1134, the aggregate of his damages so as aforesaid sustained, and for costs."

"EXHIBIT A.

"This agreement, entered into this —— day of December, 1906, between George Grubel, jr., of the first part, and W. P. Gilbert, party of the second part, witnesseth, said party of the first part, owner and sole proprietor of business known as Kansas City, Kansas, Gravel Roofing Company, of its property and rights, to the value of eight hundred dollars, wishing to dispose of one-half interest of said business to said party of second part under the following conditions: First, that there shall be eight hundred dollars, with interest at six per cent per annum, paid to party of first part out of profits of the business. (Said) party of second part, for good and efficient services as manager, shall receive fifteen dollars per week as salary until the profits of the business has paid to party of the first part eight hundred dollars, with interest at six per cent per annum, as above said. Then party of second part is to be considered as having one-half interest in the company and to receive one-half of the profits.

"Witness our hands this —— day of December, 1906."

To this petition the defendant filed a demurrer, on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled. This ruling of the court is claimed to be erroneous. It is contended that a cause of action did not and could not accrue upon the contract until the profits arising from the business had reached the sum of $800, and according to the petition they amounted to only $779.52. The petition, however, further alleges that when the profits had reached the latter sum the defendant, "without any cause . . . and against the will and without the consent of the plaintiff . . . wrongfully and forcibly ousted the plaintiff and refused to permit him to complete his contract." The defendant, having wrongfully and forcibly rendered it impossible for the plaintiff to complete his contract, can not take advantage of the plaintiff's failure to do so; he can not be permitted thus to profit by his own wrong. We think the demurrer was properly overruled.

The answer was, first, a general denial; second, an admission of the contract; and, third, an allegation that the plaintiff did not understand the business, and by his mismanagement operated it at a constant loss. The reply was a general denial. The case was tried to a jury.

It is claimed that error was committed by the court in permitting the plaintiff to establish his case by secondary and incompetent evidence. The complaint, as stated in the brief of the defendant, reads:

"The evidence of the plaintiff was from the beginning to the end made up of conclusions, mere guesses and assumptions, and was secondary. There was a regular set of books kept, in which all of the transactions pertaining to the business were recorded; books from which it could be shown the exact amount of business done, the cost of all labor and material employed in carrying on the work. The plaintiff as well as the defendant had access to these books at any and all times, and yet, without any effort by the plaintiff to have these books brought into court, without any knowledge on the part of the plaintiff as to what they contained, without any showing that they had been lost or destroyed, or that they were beyond his control, the court, over repeated objections, allowed the plaintiff to give evidence of his own manufacture concerning the very essential things he was obliged to prove in order to recover."

This statement is somewhat overdrawn, but not entirely without foundation. The court doubtless anticipated that when the defendant made his case the testimony would be sufficiently supplemented and corrected to cure whatever defects had occurred. It ought to be said in this connection that the defendant had possession of all the books of account and was familiar with them, while the plaintiff had nothing, not even his own memoranda (which he had from time to time turned over to the defendant), from which to make up the accounts of the business. He was compelled to testify from memory, and to estimate quantities and values.

Gilbert v. Grubel.

The defendant, in making his case, produced the books containing a complete history of the business, which he had kept, and testified fully concerning the same. The evidence of the plaintiff and the defendant constitutes the whole of the material and important testimony in the case. We think the evidence, when considered as a whole, was sufficient, and that no material or prejudicial error was committed in its admission.

The evidence concerning the plaintiff's management of the business was not admitted for the purpose of showing whether it had been profitable or not. The plaintiff did not agree to manage the business so as to make it profitable; he only undertook to give "good and efficient services as manager." The purpose of this evidence was, therefore, to show whether or not the plaintiff was so inefficient and incompetent as to justify the defendant in terminating the contract as he had done. In establishing a fact of this nature the distinction between the best and secondary evidence, and between the introduction of books of original entry and the personal memory of witnesses, are not so important as they would be were a different subject being investigated. Here the accurate ascertainment of accounts between the parties, the price of materials, a detailed statement of receipts and disbursements, while proper, were not controlling. The real question was whether or not the plaintiff had been grossly incompetent, indifferent, or reckless in his management. Upon this question evidence not technically in accordance with strict legal rules might be permitted without committing prejudicial error.

It is claimed that the court erred in the instructions given, and in the refusal of those requested by the defendant. These instructions, because of their length, can not be reproduced here, and will be considered generally.

Some of the instructions given, if considered alone, might seem to be misleading, but, when considered as

31—82 KAN.

a whole and with reference to the theory upon which the case was tried, seem to state the law clearly and correctly. The controlling questions in the case were these: If the defendant wrongfully and forcibly terminated the contract just when it was about completed on the part of the plaintiff, as the latter claims, and thereby made its completion impossible, the defendant would be liable to the plaintiff for damages which would compensate him for his loss. On the other hand, if, as the defendant claims, the plaintiff was ignorant of the business, and by his mismanagement caused continuous losses instead of profits, then the defendant might terminate the contract at any time. The instructions of the court presented these questions to the jury in a manner that can not be fairly criticized.

As to the measure of damages, it was agreed by the parties that if the contract was carried out as contemplated the plaintiff should have one-half of the business, which was valued by them at the time the contract was entered into at the sum of $800. Assuming that the contract was so carried out on the part of the plaintiff until it had yielded the amount of profits stipulated, less $20.48, and then the defendant wrongfully terminated the contract, it seems that the reasonable value of the property which the plaintiff was to receive and which he had earned, within a mere trifle, would not be unreasonable compensation for his loss. It is about what the ordinary mind would regard as fair and just.

It is urged, however, that inasmuch as the full amount of $800, the sum stipulated, had not been earned in profits, the plaintiff was without a remedy. If the deficiency had been only 20 cents, we suppose the same rule would be said to apply. It is said that the contract does not say anything about a substantial compliance with the agreement, but only that the profits must equal $800. True, but neither does the

Gilbert v. Grubel.

contract say that the defendant may at his pleasure terminate the agreement at a time when the plaintiff will suffer great loss for which he can not recover compensation; on the contrary, the time is unlimited within which the stipulated profits shall be earned. Where parties in their contracts do not cover contingencies which are liable to occur, they will be presumed to have intended that if an unexpected contingency should arise they will each do whatever, under the circumstances, will be fair and just. When courts are called upon to adjust differences between parties in such a case, they must be guided in their deliberations by the universally recognized principles of justice and common fairness between man and man. A technical and literal interpretation of the contract which violates manifest justice will not be adopted, but the language of the agreement will be extended or restricted so as to render it just and fair, upon the presumption that the parties so intended. We can not concur with the interpretation contended for by the defendant in this case.

Other questions are presented by counsel, but as those discussed dispose of the case none other need be considered. The judgment of the trial court is affirmed.

PORTER, J. (dissenting) : There were two sides to this lawsuit. I can not agree that the plaintiff's evidence was admitted for the purpose of showing that he had not been inefficient in the management of the business. That he had not been efficient was a matter of defense. It is true, the petition alleges that he had been efficient and competent, but the relief was demanded on the ground that the profits of the business amounted to $779.52, a sum so near the amount stipulated in the contract that equity would regard the condition as substantially complied with. He undertook to show that the profits had amounted to this sum, and

was permitted to introduce secondary evidence for that purpose, without any attempt to procure the best evidence; and other incompetent testimony was admitted in support of the same contention. It is true that he stated that in his opinion the profits approximated the amount claimed, but there was no competent evidence offered showing that the profits of the business amounted to as much as one dollar. The plaintiff knew nothing of the cost of the material, except in a few instances; he knew nothing about the amount required by the firm to keep contract work in repair, and it was impossible for him or for the jury, from his evidence, to determine that there had been any profits. He testified to the amount expended for labor during a portion of the time the contract was in force, and he stated that the business, from its nature, was generally considered profitable. Of course, equity would not deny him relief because the profits did not amount to $800, but, on the theory of his petition, it was necessary for him to establish by a preponderance of the evidence that there had been some profits; it was also necessary in order to determine the proper measure of his damages. He may be entitled to recover damages, but the case should be reversed and a new trial ordered because of the errors in the admission of evidence.